IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-00087-GCM

| | |
|---|---|
| NLA DIAGNOSTICS LLC, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| THETA TECHNOLOGIES LIMITED, and TTL HOLDINGS LIMITED, | ) |
| Defendants. | ) |

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to the doctrine of *forum non conveniens*. The matter is fully briefed and ripe for determination. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## I. FACTUAL BACKGROUND

In 2007, Dr. Peter Robert Armitage ("Armitage") and Geoffrey Pitts ("Pitts") created Defendant Theta Technologies Limited ("Defendant Theta") pursuant to the English Companies Act of 1985 to commercially exploit intellectual property arising out of research developed by Armitage at Exeter University in England. *See* Decl. Of John Greenlaw Fairbairn ¶¶ 5, 8 (hereinafter "Fairbairn Decl.").[1] Armitage's research yielded intellectual property relating to the use of non-linear acoustic sound waves to detect stresses, defects, and cracks in construction and manufacturing materials (the "Invention"). *Id* at ¶ 5; Compl. at ¶ 10. The Invention is protected by patent applications, assigned by Exeter University to Defendant Theta, in Great Britain, the

---

[1] When determining a motion to dismiss for *forum non conveniens*, the Court may rely on affidavits submitted by the parties. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988); *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) ("Requiring extensive investigation would defeat the purpose of [the] motion.").

United States, the European Union, China, and Japan. Fairbairn Decl. at ¶ 6. Exeter University retains an exclusive right to use the Invention for noncommercial purposes. *Id* at ¶ 7.

Armitage initially served as Defendant Theta's technical director, with Pitts serving as managing director. *Id* at ¶ 8. Defendant Theta's principal place of business is Exeter, England. *Id* at ¶ 3. Armitage and Pitts are English citizens. *Id* at ¶¶ 8, 12. Theta is wholly owned by TTL Holdings Limited ("Defendant TTL"), an English company with a principal place of business in Exeter, England. *Id* at ¶ 9. All of the directors of Theta and TTL are English citizens who live and work in Exeter or London, England. *Id*. Neither Defendant has any officers, employees, property, or business in the United States. *Id* at ¶ 29.

Plaintiff NLA Diagnostics LLC ("Plaintiff NLAD") was incorporated in 2009, under the laws of the State of North Carolina, to be the intended exploiter of the Invention in North America. *Id* at ¶ 10. Plaintiff NLAD's chief executive is Rick Webster ("Webster"). *Id* at ¶ 13.

On or about July 13, 2009, Defendant Theta and Plaintiff NLAD entered into a Patent Licence Agreement in which Theta granted to NLAD an exclusive license to manufacture and sell the Invention (as protected by U.S. and British patent applications) in the "Territory" (defined as the United States, Canada, and Mexico) for an initial term of 10 years from the date of the Patent Licence Agreement and an additional term of 5 years each until the expiration of the last to expire of the Invention's U.S. and British patent applications. *See* Fairbairn Decl. at ¶ 14; Compl., Ex. A. Clause 27 of the Patent Licence Agreement contains a choice-of-law and forum-selection clause that provides in full:

> **27**     **GOVERNING LAW AND JURISDICTION**
>
> **27.1**     This Agreement and any disputes or claims arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) are governed by and construed in accordance with the laws of England.

> **27.2** Subject to Clause 17, the parties irrevocably agree that the courts of England have non-exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims).

Compl., Ex. A, cl. 27. Clause 17 of the Patent Licence Agreement obligates the parties to confer in good faith if a dispute regarding the Patent Licence Agreement arises, but does not prevent the parties from initiating legal action. *Id* at cl. 17.

By a written agreement dated October 26, 2009 ("Purported Variation No 1"), Defendant Theta and Plaintiff NLAD purported to vary the Patent Licence Agreement by expanding the licensed use of the Invention to include "wind turbine blades and components." Fairbairn Decl. ¶ 18. By another written agreement dated November 10, 2010 ("Purported Variation No 2" and, together with Purported Variation No 1, sometimes collectively referred to as the "Purported Variations"), Defendant Theta and Plaintiff NLAD purported to vary the Patent Licence Agreement by extending the definition of Territory to "all countries and jurisdictions in the world, without limit" and to adjust the Initial Term to mean ten (10) years from November 10, 2010. *Id* at ¶ 19. Defendant Theta claims that it received nothing in return for the Purported Variations. *Id* at ¶ 11.

After execution of the Patent Licence Agreement, Defendants conducted all of their business within the United Kingdom, and Plaintiff manufactured and sold in North America its instrument created under licensed patents. *See Id* at ¶ 16; Compl. at ¶ 18. All of the meetings between the directors of Plaintiff NLAD and the directors of Defendant Theta occurred in England. Fairbairn Decl. ¶ 16. A director of Defendant Theta visited the United States on one occasion when Armitage provided technical support to a sales pitch by Plaintiff NLAD in or about July 2011. *Id*.

In August 2011, issues arose between Defendant Theta and Plaintiff NLAD regarding the

interpretation of, and performance under, the Patent Licence Agreement. *Id* at ¶ 20. The other directors of Defendant Theta discovered the Purported Variations and terminated Pitts as a director of Theta. *Id* at ¶ 11. The issues between Defendant Theta and Plaintiff NLAD include: the invalidity of the Purported Variations for lack of consideration; the applicable "Royalty Rate" as a percentage of "Adjusted Gross Revenues"; NLAD's obligation to pay a minimum royalty of $100,000 under clause 8.2; the exclusion of overhead or research and development costs from "direct manufacturing costs" in calculating "Adjusted Gross Revenues"; and NLAD's breach of the Patent Licence Agreement for failure to pay royalties to Theta (the "Disputed Issues"). *Id* at ¶ 20.

## II. PROCEDURAL HISTORY

Plaintiff commenced the instant action in this Court on February 9, 2012. On March 12, 2012, Plaintiff served its Complaint on Defendants in their office in Exeter, England. Plaintiff's Complaint seeks a declaratory judgment to determine the validity of the Purported Variations and the proper calculation of royalty payments under the Patent Licence Agreement. *See* Compl. ¶¶ 23-25. Plaintiff's Complaint also alleges that Defendant Theta breached the Patent Licence Agreement by marketing a non-linear acoustic testing system to customers in England and elsewhere in Europe (but not in the United States, Canada, or Mexico). *Id* at ¶¶ 20, 27-30.

On March 26, 2012, Defendants filed a Particulars of Claim against Plaintiff in the High Court of Justice, Queen's Bench Division, Bristol Mercantile Court in England, Claim No. 2BS40372 (the "U.K. Litigation"). Fairbairn Decl., Ex. A. The Particulars of Claim seeks declaratory relief and damages pertaining to the Disputed Issues between the parties. *Id*. The Particulars of Claim discloses the pendency of the instant litigation in this Court. *Id*. On March 27, 2012, the Court in the U.K. Litigation issued an Order granting Theta and TTL permission to

serve the Particulars of Claim on NLAD at its principal place of business in Charlotte, North Carolina. *Id.*, Ex. B. Theta and TTL caused the Particulars of Claim to be served on NLAD on April 6, 2012. *Id* at ¶ 27. On May 11, 2012, NLAD filed its response to Defendants' U.K. Litigation, objecting to the English Court's jurisdiction to hear this dispute and asking the English Court to stay further proceedings in the U.K. Litigation on the ground that (i) the US Action involving the same claims is the prior pending action, and (ii) the English Court is not a convenient forum. *See* Affidavit of William Richard Webster ("Webster Aff").

On April 23, 2012, Defendants answered the Complaint in the instant litigation and filed compulsory counterclaims pertaining to the Disputed Issues. Defendants' Answer also included a motion to dismiss pursuant to the doctrine of *forum non conveniens*.

## III.  LEGAL STANDARD: The Doctrine of *Forum Non Conveniens*

"Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)). "A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Tang v. Syntura Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011). A district court must determine whether the alternative forum is: (1) available; (2) adequate; and (3) more convenient in light of the public and private interests involved. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947)); *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947). The moving party bears the burden of showing that an adequate alternative forum exists. *Galustian v. Peter*, 591

F.3d 724, 731 (4th Cir. 2010).

Availability will ordinarily "be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n. 22 (quoting *Gilbert*, 330 U.S. at 506-507). "A foreign forum is adequate when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'" *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 Fed. Appx. 84, 90 (4th Cir. 2007) (quoting *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991)). "In rare circumstance, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Piper Aircraft*, 454 U.S. at 254 n. 22.

If the alternative forum is both available and adequate, then the district court must weigh the public and private interest factors. *Tang*, 656 F.3d at 249. The factors pertaining to the private interests of the litigants include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. The public factors bearing on the question include the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330

U.S. at 508).

## A. The English Court is an Adequate and Available Forum

The Court finds that the Defendants, the moving parties, met their burden of showing that the English Court is an adequate and available forum. This issue merits no further discussion in light of the fact that Plaintiff concedes that England offers a forum that is both adequate and available. *See* Pl.'s Resp. at p. 4.

## B. The Private Interest Factors Do Not Strongly Favor Either Party

The factors pertaining to the private interests of the litigants include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the costs of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 508).

The arguments of both parties put the private interest factors at equipoise. Plaintiff claims that its documents are in North Carolina and Defendants claim that their documents are in England. *See* Webster Aff. at ¶ 14; Fairbairn Decl. at ¶ 30. Likewise, Plaintiff argues that some witnesses are residents of the United States and Defendants argue that other witnesses reside in the United Kingdom. *See* Webster Aff. at ¶ 13; Def.'s Br. at 9. The parties also make counter-balancing arguments regarding the availability of compulsory process for attendance of unwilling witnesses and regarding the costs of obtaining attendance of willing witnesses. *See* Def.'s Br. at 17; Webster Aff. at ¶ 19.

## C. The Public Interest Factors Strongly Favor Dismissal

The public interest factors to be considered in a *forum non conveniens* analysis include:

the "local interest in having localized controversies decided at home"; the avoidance of unnecessary problems in conflict of laws, or the application of a foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241 n. 6 (quoting *Gilbert*, 330 U.S. at 508).

Here, the factors of public interest weigh strongly in favor of dismissal. First, Defendants rightly observe that North Carolina has little interest in this controversy, which primarily concerns allegations of breach of a contract governed by English law by English companies. Second, the factor of avoiding problems applying foreign law strongly favors dismissal of this action. *See Piper Aircraft*, 454 U.S. at 259-260. The Patent Licence Agreement at issue in the instant litigation requires the application of English law to the dispute and clearly contemplates the permissive jurisdiction of the English Courts. Thus, in the present forum, the Court would be substantially burdened with attempting to "untangle problems in conflict of laws, and in law foreign to itself," while the same concerns would not be present in England. *Gilbert*, 330 U.S. at 509; *see also Piper Aircraft*, 454 U.S. at 251; *see, e.g., Wolff v. Zip.ca, Inc.*, 2009 WL 1628887, at *3 (M.D.N.C. June 10, 2009) ("Although this does not rule out hearing the case in North Carolina, the court would be applying foreign laws in a dispute involving the financial problems of a Canadian baseball team. This matter is best handled by the courts in Ottawa. Accordingly, the court will recommend dismissal of the action on *forum non conveniens* grounds."). "The *forum non conveniens* doctrine exists largely to avoid such comparative law problems." *Tang*, 656 F.3d at 252 (citing *Piper Aircraft*, 454 U.S. at 251). Finally, the Western District of North Carolina has comparatively less interest in this case, which primarily involves injuries inflicted abroad, and jury duty "ought not be imposed upon the people of a community which has no relation to the litigation." *Gilbert*, 330 U.S. at 508-509.

Plaintiff's reliance on two cases from the Middle District of North Carolina is accurate, but the cases are easily distinguished from the instant controversy. In *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987), the Middle District found that the defendants failed to demonstrate the presence of an adequate alternative forum. *'In' Porters*, 663 F. Supp. at 505. One of the two defendants had its principal place of business in Winston-Salem, NC, and the Court found that it lacked evidence to determine whether French law would govern the dispute. *Id*. Under those facts, the defendants failed to establish a more convenient forum. *Id* at 506. Here, however, both Defendants maintain their principal place of business in England and the Patent Licence Agreement calls for the mandatory application of English law. In *S & D Coffee Inc. v. GEI Autowrappers*, 995 F. Supp. 607 (M.D.N.C. 1997), the plaintiff conceded that English law would govern only some aspects of the case, and the Court noted a need for the jury to view a defective machine that was located in North Carolina. *S & D Coffee*, 995 F. Supp. at 611. Here, again, English law governs the entire dispute and there is no machinery, or other similar item, present in North Carolina that a jury would be required to view.

In sum, Defendants convincingly met their burden of demonstrating that the public interest factors at issue favor the English forum and disfavor litigation in the Western District of North Carolina. The public interest factors tip the scales in favor of dismissal in light of this Court's analysis finding the private interest factors at equipoise.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss on the ground of *forum non conveniens* is **GRANTED**.

Signed: August 3, 2012

Graham C. Mullen
United States District Judge